IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| BARRINGTON GLEN PLAINTIFF, | : |
| Plaintiff, | : |
| v. | : Case No. 5:23-cv-352-MTT-AGH |
| OFFICER JOSE RIVERA, | : |
| Defendant.[1] | : |

**REPORT AND RECOMMENDATION**

Before the Court is Defendant's motion for summary judgment (ECF No. 19). For the following reasons, it is recommended that Defendant's motion be denied.

**PROCEDURAL BACKGROUND**

Plaintiff's claims arise from his confinement at Wilcox State Prison ("WSP"), where he contends Defendant used excessive force by deploying pepper spray and a taser on him. Compl. 5, 7, ECF No. 1. Following preliminary screening, Plaintiff's Eighth Amendment excessive force claim against Defendant was allowed to proceed for further factual development. Order & R. 7, Nov. 8, 2023, ECF No. 3; Order, Dec. 15, 2023, ECF No. 7 (adopting recommendation). Other claims raised by Plaintiff were dismissed. *Id.* Defendant answered the complaint on February 1, 2024, and moved for summary judgment on June 26, 2024 (ECF Nos. 9, 19). The Court received Plaintiff's timely response on July 18, 2024 (ECF No. 21). Defendant's

---

[1] Because Plaintiff's claims against a separate Defendant were dismissed on preliminary review, the Court has amended the case caption to reflect Rivera as the sole remaining Defendant. The Clerk is directed to amend the docket accordingly.

motion for summary judgment is ripe for review.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine dispute of material fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). A fact is material if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. *Id.* at 324-26. This evidence must consist of more than conclusory allegations. See *Avirgan v. Hull*, 932 F.2d

1572, 1577 (11th Cir. 1991).  In sum, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

## II. Plaintiff's Response to the Motion for Summary Judgment

The Local Rules of the United States District Court for the Middle District of Georgia (hereinafter "Local Rules") provide:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine dispute to be tried. Response shall be made to each of the movant's numbered material facts.  All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L. R. 56.  Following Defendant's filing of his motion for summary judgment, the Court sent Plaintiff notice of his right to respond to the motion within thirty days. Notice, June 27, 2024, ECF No. 20.  The notice specifically referred Plaintiff to Local Rule 56's requirement of a separate response to each numbered paragraph of Defendant's statement of material facts.  *Id.*  However, while Plaintiff timely responded to Defendant's motion for summary judgment, he did not attach a separate response to Defendant's statement of undisputed material facts (ECF No. 19-1) or attach his own statement of disputed facts.

Nevertheless, the Court "has 'broad discretion' to 'overlook a nonmoving party's noncompliance with Local Rule [56]' and to look beyond the confines of a statement of undisputed facts on summary judgment."  *Hampton v. Atzert*, 590 F. App'x 942,

944 (11th Cir. 2014) (quoting *Reese v. Herbert*, 527 F.3d 1253, 1270 (11th Cir. 2008)); *see Light for Life, Inc. v. Our Firm Found. for Koreans, Inc.*, No. 3:12-cv-38-CAR, 2015 WL 631138, at *2 n.10 (M.D. Ga. Feb. 12, 2015) (noting the district court's discretion to overlook a party's noncompliance with the local rule). Moreover, even if Plaintiff had failed to file *any* response to Defendants' summary judgment motion—as opposed to just the statement of undisputed material facts—the Court would still be required "[a]t the least . . . [to] review all of the evidentiary materials submitted in support of the motion for summary judgment." *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101-02 (11th Cir. 2004). "In other words, the court cannot simply accept the facts stated in a moving party's statement of material facts as true but must also review the movant's citations to the record and confirm that there are no issues of material fact." *Major v. Toole*, No. 5:15-cv-483-MTT, 2018 WL 5811484, at *2 (M.D. Ga. Nov. 6, 2018) (quoting *One Piece of Real Prop.*, 363 F.3d at 1103 n.6).

Here, a review of Plaintiff's deposition—which Defendant attached to his motion—demonstrates particular instances where deeming Defendant's statement of undisputed facts admitted would be inappropriate and clearly shows facts that are in dispute. Therefore, in light of Plaintiff's *pro se* status, the Court exercises its discretion in those instances to overlook Plaintiff's noncompliance with Local Rule 56. The following statement of facts reflects the Court's use of its discretion and is viewed in a light most favorable to Plaintiff.

### III. Statement of Facts for Summary Judgment Purposes

On the date of the incident at issue in this case—July 3, 2023—Plaintiff was sixty-four years old and had been incarcerated at WSP for approximately two years. Pl.'s Dep. 9:8-9, 16:19-17:7, 17:8-12, ECF No. 19-3. Defendant was employed as a Corrections Emergency Response Team ("CERT") sergeant at Telfair State Prison. Def.'s Decl. ¶ 2, ECF No. 19-4. However, on July 3, 2023, Defendant was working at WSP on a one-day assignment as a CERT support officer. *Id.* It was Defendant's first time working at WSP. *Id.*

Between 4:00 and 4:30 p.m., Plaintiff's assigned dorm, Dorm D-3, was called to the chow hall. Pl.'s Dep. 17:13-17, 18:2-4; Def.'s Decl. ¶ 3. Plaintiff was in the restroom when chow hall was called, and when he came out, an officer asked where he had been. Pl.'s Dep. 17:21-24. When Plaintiff responded that he had been in the restroom, the officer instructed Plaintiff to "[g]o in," so he proceed to chow hall. *Id.* at 17:24-18:1. Defendant was working at the door of the chow hall, and as Plaintiff approached, he told Plaintiff he was going the wrong way and that he had to "go around" if he wanted to enter.[2] *Id.* at 20:19-21:21:1. When Plaintiff pointed out the other gates were closed and that he could not go around, Defendant stated, "I say go

---

[2] In his declaration and statement of undisputed material facts, Defendant claims that Plaintiff approached the dining hall after his "living unit" had already entered, and for this reason, he "instructed him to return down the hall to his dormitory in the D-3 unit." Def.'s Decl. ¶ 3; Def.'s Statement of Undisputed Material Facts ("SMF") ¶ 4, ECF No. 19-1. The latter assertion is clearly disputed by Plaintiff's deposition testimony, however, including on those pages cited by Defendant in support of his statement of undisputed facts. Throughout his deposition, Plaintiff consistently testified Defendant told him to "go around," not that he had to return to his dorm. Pl.'s Dep. 23:14-16, 25:19-20, 27:14-15, 29:6-15, 36:4-5. Therefore, despite Plaintiff's failure to specifically respond to this assertion, the Court concludes it is disputed and assumes for purposes of summary judgment, that Defendant told Plaintiff to go around as opposed to ordering him to return to his dorm.

that way." *Id.* at 21:4-7. Instead of attempting to go around, however, Plaintiff decided he would get his medication and then return to his dorm. *Id.* at 21:11-12, 23:21-22. Because of various medical conditions, including arthritis, Plaintiff takes pain medication every day. *Id.* at 15:2-25. It was not uncommon for Plaintiff to skip meals and instead get his medication and eat something from the store. Pl.'s Dep. 30:24-31:1, 33:7-34:22.

Pill call was located on the other side of Gate 24, which was near the chow hall. *Id.* at 23:23-24:1. In order to get to pill call, inmates had to wait until Gate 24 was opened. *Id.* at 32:16-19. When the gate was opened, inmates would enter to get their medication and then return to wait until the gate was opened again to leave. *Id.* at 32:19-23. After his conversation with Defendant, Plaintiff went and stood by a mailbox near Gate 24. *Id.* at 23:23-24:1. At that point, Defendant began to walk toward Plaintiff. *Id.* at 24:1-2. Believing Defendant was going to open the gate to let him through, Plaintiff walked to Gate 24. Pl.'s Dep. 24:3-5. Instead, Defendant stated, "Didn't I tell you to go this way?" *Id.* at 40:14-15, 42:9. Plaintiff responded that he was trying to get his medication, at which point Defendant sprayed him with pepper spray. *Id.* at 24:5-7, 39:10-11, 40:15-18, 42:10-11, 43:11-12. Plaintiff grabbed his face and spun around, and Defendant then tased him in the back. *Id.* at 41:18-20, 42:11-12, 44:17-23. Plaintiff hunched over, feeling like he was "getting paralyzed."[3] *Id.* at 42:14-16. When he rose up and spun back around, Defendant

---

[3] In his declaration and statement of undisputed material facts, Defendant claims the taser "did not work." Def.'s Decl. ¶ 3; Def.'s SMF ¶ 7. Plaintiff, however, testified in his deposition that it was working and he felt a shock. Pl.'s Dep. 45:1-5.

pepper sprayed him again. *Id.* at 42:20-24, 49:5-7. At this point, Defendant called for other officers who arrived and handcuffed Plaintiff. Pl's Dep. 45:18-21, 48:3-9, 50:4-10. Plaintiff was then taken to the medical unit. *Id.* at 50:9-17. This entire interaction happened within minutes. *Id.* at 45:11.

When Plaintiff arrived in the infirmary, a nurse cleaned the spray off of his face because it was "burning." *Id.* at 55:1-5. He was also given water and his medication. *Id.* at 53:17-20. Plaintiff stated his body felt "really hot" after the incident and that he still felt burning on his face and back a couple of days afterward. *Id.* at 53:21-22, 57:15-58:7.

## IV. Defendant's Motion for Summary Judgment

Defendant asserts he is entitled to summary judgment because Plaintiff cannot show a violation of his Eight Amendment rights and because qualified immunity bars his claims. Def.'s Br. in Supp. of Mot. for Summ. J. 4-9, ECF No. 19-2. As explained below, Defendant is not entitled to summary judgment because Plaintiff established a question of fact as to whether an Eighth Amendment violation occurred.

### A. Qualified Immunity

"[Q]ualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Oliver v. Fiorino*, 586 F.3d 898, 904 (11th Cir. 2009) (quotation marks omitted). A defendant seeking qualified immunity must show that, at the time of the alleged wrongful acts, "he was acting within the scope of his discretionary authority." *Id.* at

905. Once this is established, "the burden then shifts to the plaintiff to show that the grant of qualified immunity is inappropriate." *Id.* To do so, a plaintiff must "demonstrate: first, that the facts when viewed in a light most favorable to the plaintiff establish a constitutional violation; and, second, that the illegality of the officer's actions was clearly established at the time of the incident." *Id.* (quotation marks omitted). Here, there is no dispute that Defendant was acting in the scope of his discretionary authority. Moreover, Defendant does not argue he is entitled to qualified immunity on the clearly-established prong of the qualified immunity analysis. Thus, the sole issue for the Court is whether, in a light most favorable to Plaintiff, the facts show an Eighth Amendment violation.

    B.    <u>Eighth Amendment Violation</u>

        *1.    Excessive force standard*

"Under the Eighth Amendment, force is deemed legitimate in a custodial setting if it is 'applied in a good-faith effort to maintain or restore discipline' and not 'maliciously and sadistically to cause harm.'" *Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). To determine whether there has been an Eighth Amendment violation, a court "consider[s]: (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of the injury inflicted upon the prisoner'; (4) 'the extent of the threat to the safety of staff and inmates'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007)). Moreover, a court must give "wide

ranging deference" to prison officials "acting to preserve discipline and institutional security." *Brown v. Smith*, 813 F.2d 1187, 1188 (11th Cir. 1987).

### 2. *Defendant is not entitled to summary judgment*

Defendant argues Plaintiff cannot show an Eighth Amendment violation because the undisputed evidence shows (1) Plaintiff "was given clear instructions to return to his dorm"; (2) "there was a security reason and purpose for the instructions"; (3) Plaintiff "refused to follow" Defendant's "instructions . . . and repeated efforts to direct him to walk back to his dorm"; (4) Defendant did not use force on Plaintiff until after he refused to follow his instructions and this use of force "was done to restore order and gain control of the situation"; and (5) "Plaintiff's injury was minimal." Def.'s Br. in Supp. of Mot. for Summ. J. 6-7. The Court disagrees.

Whether Defendant gave Plaintiff "clear instructions" to return to his dorm and whether Plaintiff refused those instructions is very much in dispute. As noted previously, Plaintiff testified throughout his deposition that Defendant instructed him to "go around" if he wanted to enter the chow hall, not that he had to return to his dorm. Pl.'s Dep. 23:14-16, 25:19-20, 27:14-15, 29: 6-15, 36:4-5; s*ee Sears*, 922 F.3d at 1208 ("As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature."). Moreover, even if the facts were undisputed that Defendant instructed Plaintiff to return to his dorm—which they are not—Defendant does not state his

instructions to Plaintiff required him to return *immediately* to his dorm at the expense of first obtaining his medication. Finally, there is a factual dispute as to whether Plaintiff refused Defendant's instructions because the evidence—in a light most favorable to the nonmovant—shows he heeded Defendant's directions that he could not enter the chow hall door as intended and instead walked to Gate 24, where he intended to get his pain medication and then return to his dorm. *Id.* at 21:11-12, 23:21-22.

In addition, after weighing the relevant factors outlined above, the Court concludes that whether Defendant's use of force was for the purpose of maintaining order as opposed to being maliciously and sadistically intended to cause harm is an issue for determination at trial. Defendant contends force was necessary to ensure compliance with his instructions, but again, there is a factual dispute as to whether Plaintiff refused any instructions. Further, Defendant does not explain why—assuming Plaintiff did refuse his instructions—the use of pepper spray and a taser on a sixty-four year old inmate was necessary as opposed to simply using handcuffs as was done eventually. There is no evidence Plaintiff acted violently, so there appears to have been no threat to the safety of staff or other inmates. In his declaration, Defendant contends that when he saw Plaintiff standing at Gate 24, he told him he was going the wrong way and that Plaintiff "approached [him] in a confrontational manner disputing [his] instructions for him to return to his dormitory." Def.'s Decl. ¶ 3. Defendant does not explain what he means by "confrontational manner," but he does not aver that Plaintiff was acting in a violent

or threatening manner. "[A] prisoner initiating a verbal altercation does not give prison guards carte blanche to use force sadistically and maliciously." *Williams v. Radford*, 64 F.4th 1185, 1197 (11th Cir. 2023). In any event, Plaintiff clearly disputes Defendant's version of events, contending it was Defendant who was acting "hostile" and walked toward him. Pl.'s Dep. 23:19, 24:2, 30:17, 42:5-9. Perhaps by "confrontational manner," Defendant is referring to Plaintiff's efforts to explain that he was waiting for his medication before returning to his unit. *Id.* at 42:9-11. Viewed in a light most favorable to Plaintiff, the evidence shows Defendant did not seek to explore this explanation prior to spraying Plaintiff.[4] *Id.*

Regarding efforts to temper the severity of the use of force, while Defendant was one of at least two officers who accompanied Plaintiff to the medical unit, the evidence is unclear as to whether this was at Defendant's behest or that of the responding officers. Pl.'s Dep. 54:14-17; Def.'s Decl. ¶ 3.

Defendant argues Plaintiff's injuries were minimal, and it is correct that the extent of injury "may suggest whether the use of force could plausibly have been thought necessary" and "may also provide some indication of the amount of force applied." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quotation marks omitted). However, "[t]he focus of [the Court's] Eighth Amendment inquiry is on the nature of the force applied, not on the extent of the injury inflicted." *Sears*, 922 F.3d at 1205

---

[4] The Court notes that the dispute about who approached who and who was acting in a hostile manner could have been resolved if a video recording of the incident had been introduced into the record. According to Plaintiff, there were three cameras in the area where the use-of-force occurred and as he was being taken to the medical unit, the assistant warden walked by and stated he was going to go look at footage of the incident. Pl.'s Dep. 40:4-5, 46: 4-6, 50:13-16, 73:7-8. Defendant, however, has introduced no video footage of the incident.

(citing *Wilkins*, 559 U.S. at 37–38). "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38. Similarly, while the use of pepper spray and tasers may otherwise be constitutionally permissible to control unruly or noncompliant inmates, their use without penological justification is not. *See Williams v. Rickman*, 759 F. App'x 849, 851 (11th Cir. 2019) ("Correctional officers in a prison setting can use pepper spray on an inmate, but there must be a valid penological reason for such a use of force."); *Thomas v. Bryant*, 614 F.3d 1288, 1311 (11th Cir. 2010) ("[W]here chemical agents are used unnecessarily, without penological justification, or for the very purpose of punishment or harm, that use satisfies the Eighth Amendment's objective harm requirement."); *Lewis v. Downey*, 581 F.3d 467, 475-78 (7th Cir. 2009) (holding that "the use of a taser gun against a prisoner is more than a *de minimis* application of force" and "runs afoul of the Eighth Amendment [] when it is intended maliciously and sadistically to cause harm" (quotation marks omitted)); *Caldwell v. Moore*, 968 F.2d 595, 600-01 (6th Cir. 1992) (holding that while the use of a stun gun is not a "per se" Eighth Amendment violation, it can be if used "maliciously and sadistically to cause harm").

Here, viewing the facts in a light most favorable to Plaintiff, he did not refuse to comply with any instructions and was simply standing in line waiting for his medication when Defendant pepper sprayed and tased him. Under these circumstances, summary judgment is inappropriate. *See Williams*, 759 F. App'x at

852 (reversing district court's grant of summary judgment, finding inmates denial that he created a disturbance created "an issue of fact as to whether the use of pepper spray was warranted"); *Morris v. Stewart*, No. CV 322-089, 2023 WL 6884162, at *5 (S.D. Ga. Sept. 19, 2023) ("Construing the facts in Plaintiff's favor, reasonable jurors could find Defendant's use of pepper spray was unnecessary, unreasonable, and applied maliciously or sadistically rather than in a good-faith effort to maintain or restore discipline."), *recommendation adopted by* 2023 WL 6882442 (S.D. Ga. Oct. 18, 2023).

## CONCLUSION

For the reasons explained above, it is recommended that Defendant's motion for summary judgment (ECF No. 19) be **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within FOURTEEN (14) DAYS after being served with a copy hereof. Any objection should be no longer than TWENTY (20) PAGES in length. The district judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the

time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 31st day of October, 2024.

             s/ *Amelia G. Helmick*
             UNITED STATES MAGISTRATE JUDGE